McKinney, J.,
delivered the opinion of the Court.
This was an agreed case. The facts are as follows: The plaintiff is a married woman, wife of Will. E. Harris. In the year 1855, perhaps, one Garmany made a gift to Mrs. Harris, of the sum of $800.00, in money, for the express purpose of purchasing a nurse for a child of Mrs. Harris, who bore his surname. The money was given through the medium of the husband of Mrs. Harris. And the gift was made upon the express condition, that the negro should be the separate, absolute property of Mrs. Harris and child, or children, and free forever from the marital rights of her husband. With this sum of money a negro girl was purchased for Mrs. Harris; but she turned out to be a girl of bad temper and disposition, unsuited for a nurse, and for that reason she was sold; and with the proceeds, *154 being $950.00, Mrs. Harris, through a friend, on the 23d of June, 1856, purchased another negro girl, named Katy, and her child, from one John L. Divine. The bill of sale for said slaves was made directly to Mrs. Harris, and was never registered. Afterwards, on the 2d of October, 1857, W. F. Harris, the husband, made a deed of trust- to secure a large indebtedness, on his part, to the Union Bank of Tennessee; and among other property conveyed by said deed, were the negro girl and her eh ildabove mentioned — the separate property of his wife and infant child.
The question for our determination is, whether, upon the foregoing facts, the Bank can enforce a sale of the slaves against the claims of Mrs. Harris.
It is well settled, that the 7th sec. of the Statute of frauds, 29, Charles 2, chap. 3, applies only to “lands and tenements, and hereditaments.” The law, in regard to personal chattels, remains wholly unaffected by the Statute-: and a valid trust of personal property, may not only bo created, but may also be established and proved by mere parol declaration: Hill on Trustees, (ed. of 1854,) 69, 72; Lewin on Trusts, 61.
It is essential, however, to the creation of a trust by parol declarations, that the expressions used should amount to a clear and explicit declaration of trust. The subject matter of the trust, as well as the object of the trust, must be pointed out with certainty: Hill on Trustees, 75. If the trust be purely voluntary, it will not be enforced against the donor, upon a mere parol declaration, unless a complete executed trust be clearly proved, Ib., 76; 1 Hare, 476, 438 ; but it is well settled, that a trust, once effectually created by pa- *155 rbl, and fully executed, cannot subsequently be extinguished, revoked, or altered by tlie party creating it, any more than a mere formal assurance: Ib., 71 ; nor can it be affected by any subsequent declarations of the donor: Lewin on Trusts, 61; 1 M. & H., 520.
It is clear, upon these principles, that a valid irrevocable trust was created in favor of Mrs. Harris and her infant, in the first mentioned negro girl, and it is no less clear, that by the investment of the proceeds of the sale of that slave, in the last named woman and child, the trust attached to the latter, as fully as to the former. The change of property, so long as the trust fund can bo certainly traced, is a matter of no importance. Nor is it at all material to the rights of Mrs. Harris and her infant, that the title was conveyed directly to herself, without the interposition of a trustee; the principle is a familiar one, that a Court of Equity will not suffer a trust, clearly established, to fail for want of a trustee.
The absence of a trustee, only renders it the more difficult to establish the trust in many cases, but when sufficiently established, the trust itself is as valid, and will be as amply protected without, as with a trustee.
The possession of the slaves by the husband, and his ostensible ownership of them, is of no avail against the rights of the wife and her infant. The apparent possession of the husband, in such cases, is a necessary consequence of the relation of the parties. It surely will not do to hold, that in order to enable the wife to become the owner of separate property, a dissolution of the marriage relation de facto, must first take place. The husband is regarded as holding the possession of *156 the property in the character of a trustee for the wife, in such a case.
Nor can the non-registration of the title of Mrs. Harris and her infant, be held to prejudice their rights. That is an objection which the creditors of the husband cannot be heard to make, under our registry law. The creditors of the donor alone, could avail themselves of this matter. We are of opinion, therefore, that no title passed to the Bank by the trust deed; and that the title to the slaves remains unimpaired in Mrs. Harris and her child — or children, as the case may be — to the negro woman and child, as well as to any increase of the woman born since the date of the conveyance from Divine, on the 23d of June, 1856. The decree of the Chancellor will be reversed, and the legal title to the slaves and their future increase, will be vested in a suitable trustee, to hold for the exclusive benefit of Mrs. Harris, and her child and children, in exclusion of the marital rights of the husband, and all others.